UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.  01-30673
Summary Calendar

_____


GEORGIA M. WOODS,

              Plaintiff - Appellant

VERSUS


DELTA BEVERAGE GROUP, INC., doing
business as Delta Beverage Company,

              Defendant - Appellee

_____

Appeal from the United States District Court
For the Western District of Louisiana

_____
December 11, 2001

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:

     The Plaintiff, Georgia M. Woods ("Woods"), asserts claims for

sexual harassment in violation of Title VII and Louisiana law and

constructive discharge.  The issue on appeal is whether Woods'

failure to notify the Defendant Delta Beverage Company ("Delta

Beverage") about ongoing harassment after the July 7, 1998 meeting

prevents her from surviving summary judgment on her hostile working

1

environment claim. We conclude that the hostile working environment claim does not survive summary judgment because Woods did not follow the established company procedure for remedying her complaints.

## I. FACTS AND PROCEDURAL HISTORY

Woods began working as a part-time telephone sales clerk for Delta Beverage on June 18, 1998. She started as a temporary employee working through a temporary employment agency. Delta Beverage hired her as a Delta Beverage employee a few weeks later. Woods quit working for Delta Beverage on July 22, 1998.

Woods alleged that she was sexually harassed by a co-employee, Gary Eddy, on a daily basis during the course of her employment at Delta Beverage. She contends that, on a daily basis, Eddy rubbed her shoulders and neck. She also contends that Eddy touched her hair on one occasion, held her hand on one occasion, kissed her hand on one occasion, and touched her blouse on one occasion. Woods also contends that Eddy telephoned her home six to eight times. However, she did not answer any of these calls.[1]

On July 6, Woods informed another employee, Nicy Gordon ("Gordon"), that she was being harassed by Eddy and could not put up with Eddy putting his hands on her anymore. At first, Gordon informed her that she did not know what to do because her

_____

[1] Woods claims that the phone calls were from Eddy because a Delta Beverage phone number showed up on her caller ID.

supervisor, Greg Barrett, was on vacation.  However, later that day, Gordon asked Woods to come into work the next day for a meeting about the subject.

On July 7, Eric Sherer and Bobby Smith, Delta Beverage district managers, investigated Woods' complaints concerning Eddy's behavior.  Scherer and Smith met separately with Woods and Eddy. They informed Eddy that his conduct was inappropriate and that his actions would be noted in his employment file.  They also warned him that further similar behavior would lead to disciplinary action, including termination.  They told Woods that she should notify them immediately if Eddy engaged in further inappropriate behavior.

On July 8, Woods worked with Eddy all day long.  At the end of the day, one of the district managers called Woods. He asked her if she was comfortable with the way the situation had been handled, and, if she had experienced further problems with Eddy.  She informed him that she had not had any problems with Eddy on that day.

Woods worked at Delta Beverage for two more weeks.  During this time period, Woods contends that Eddy continued his unwelcome touching.  However, Woods did not report the touching to Smith, Scherer, or anyone else at Delta Beverage.  On July 23, Woods did not report to work.  Gordon called to inquire why.  Woods informed Gordon that she was not feeling well.

3

Woods missed several more days of work. Delta Beverage attempted to contact her several times to find out why. She never returned their calls, and never showed up for work again.

On June 19, 2000, Woods filed suit against Delta Beverage in a Western District of Louisiana federal court. The complaint asserted hostile work environment and constructive discharge claims based upon Eddy's conduct. On May 31, 2001, the district court granted Delta Beverage's motion for summary judgment on all claims. The district court concurrently entered final judgment for Delta Beverage. Woods subsequently filed a timely notice of appeal.

## II. JURISDICTION

Woods appeals from the district court's final judgment dismissing with prejudice all of her claims. Thus, we have jurisdiction under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

We review a district court's decision to grant summary judgment *de novo*, applying the same standards as the district court. *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment is proper when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

4

## IV. DISCUSSION

### A. Hostile Working Environment

A plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In order to establish a hostile working environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[2] *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 873 (5th Cir. 1999).

In the instant case, Woods has satisfied the first three elements. Therefore, only two issues need be addressed: (1) whether Woods has raised a genuine issue of material fact that the alleged harassment was severe or pervasive enough to alter a "term,

---

[2] In *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999), we drew a distinction between cases in which an employee asserts a Title VII sexual harassment claim alleging that a supervisor with immediate (or successively higher) authority harassed her and cases in which the harasser is a co-worker. In the former situation, the employee need only satisfy the first four elements of the aforementioned test. *Id.* In the latter situation, we made clear that the employee must satisfy all five elements. *Id.* at 509, n.3. Here, it is undisputed that Eddy was a route settlement clerk with no supervisory authority over Woods. Indeed, Appellant's brief repeatedly refers to Eddy as merely a co-worker. Therefore, Woods must satisfy all five elements.

5

condition, or privilege" of her employment; and (2) whether Woods has raised a genuine issue of material fact that Delta Beverage failed to take prompt remedial action.

**1.   Did Eddy's harassment affect a "term, condition, or privilege" of Woods' employment?**

In order to be actionable, Eddy's harassment must have created an environment that a reasonable person would find hostile or abusive.  Whether a reasonable person would find the environment to be hostile or abusive should be evaluated by looking at the totality of the circumstances.  This includes the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993).

The district court determined that a reasonable person would not have found Eddy's actions to be either hostile or abusive for two reasons.  First, the court noted that Woods was only subjected to unwelcome touching for a few minutes each day.  Second, the court found that Woods had failed to address how or if her work performance was affected by Eddy's roving hands.

Whether the complained of conduct qualifies as severe or pervasive under our hostile working environment jurisprudence is a close question.  Because the district court's decision can be upheld based upon the prompt remedial action element, we need not

6

rule on whether a reasonable woman could deem Eddy's conduct to be severe enough to alter the terms or conditions of her employment. However, we will assume *arguendo* that Woods has raised a fact issue on the fourth element.

## 2.  **Prompt Remedial Action**

Woods admits that she first reported Eddy's actions to company personnel on July 6.  The next day a meeting took place to address the alleged harassment.  Delta Beverage told Eddy to stop his conduct or face further disciplinary action, including termination. Delta Beverage told Woods to inform Smith or Scherer if further unwelcome touching occurred.  Woods admits that she never informed them of any further problems with Eddy.

Because we view the facts in the light most favorable to Woods, we assume that Eddy continued to harass Woods after the July 7 meeting.  Even so, Delta Beverage cannot be held liable for conduct of which it had no knowledge.  Woods had the obligation to report the alleged harassment to Delta Beverage as she had been instructed.  Her failure to do so is fatal to her case.[3]

---

[3]  In Title VII sexual harassment cases where the alleged harasser is a supervisor, an employer may assert the following affirmative defense: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Ind. v. Ellerth*, 524 U.S. 742, 765 (1998).  As mentioned previously, this is not a supervisor liability case.  However, the second prong of the affirmative defense is instructive to our "co-worker" liability case.  To avoid further harm after July 7, Woods needed to reasonably take

Woods bases her contention that Delta Beverage failed to take prompt remedial action on two factors. First, she claims that Gordon told her that Gordon and another female employee had been been subject to inappropriate behavior by Eddy. Woods claims this demonstrates that Delta Beverage had prior knowledge of Eddy's proclivities toward unwelcome touching.

Even if Gordon's statements could be deemed admissible evidence and accepted as true, her argument fails. It is undisputed that Eddy's harassment always occurred in private. Moreover, there is no evidence to suggest that any employee reported any Eddy harassment to Delta Beverage prior to Woods' July 6 report. Therefore, there is no basis for a finding that Delta Beverage had knowledge of Eddy's proclivity towards unwelcome touching prior to July 6.

Second, Woods contends that Delta Beverage should be liable because the actions the company took against Eddy on July 7 did not stop the harassment. This argument is also without merit. On July 7, Delta Beverage was not legally obligated to fire Eddy or separate him from work interaction with Woods. *See Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 525 (noting that an employer need not use the most serious sanction available to punish a sexual harassment offender). Delta Beverage

---

advantage of the corrective opportunities provided by her employer. Woods cannot have expected Delta Beverage to solve her problem when it had no knowledge that she continued to suffer harassment.

8

took prompt remedial action because (1) district managers told Eddy to stop the unwelcome touching and informed him that failure to do so would result in further discipline, including termination; (2) on July 8, a manager asked Woods whether the harassment had stopped and was told there were "no problems on that day"; and (3) supervisors told Woods to inform them of any further harassment.[4]

Of course, there is a point at which an employer will be liable for failing to end harassment notwithstanding their admonitions to the employee to report further harassment to company supervisors. For example, assume that Woods had informed Delta Beverage after July 7 that Eddy was continuing to harass her. Assume further that Delta Beverage responded by simply giving Eddy another verbal warning and telling Woods to inform the supervisors if the harassment continues. At that point, Woods might have an objective basis for concluding that further reports of harassment would be futile. Under this hypothetical scenario, Delta Beverage's contention that Woods should be required to again inform the company that Eddy was harassing her would be less persuasive because it would seem as though the company did not really intend to stop the harassment. Stated another way, once it becomes objectively obvious that the employer has no real intention of

---

[4] Whether Woods received a copy of Delta Beverage's sexual harassment policy is irrelevant because Woods had actual knowledge of what she should do if Eddy engaged in further inappropriate touching.

stopping the harassment, the harassed employee is not obliged to go through the wasted motion of reporting the harassment. Clearly, however, that was not the situation in the case at bar.

In short, Delta Beverage took reasonable steps on July 7 to correct the harassment. Woods had an obligation to give the company another opportunity to remedy the problem before deciding that she could not work there anymore. Therefore, Woods has not raised a genuine fact issue on the prompt remedial action element.

## B. CONSTRUCTIVE DISCHARGE

To prove a constructive discharge, Woods must show that a "reasonable person in [her] shoes would have felt compelled to resign." *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). Moreover, to be actionable, Woods must demonstrate a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim." *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998).

As a matter of law, the type of harassment experienced by Woods does not satisfy this higher standard. A reasonable woman experiencing the type of harassment complained of by Woods would not have felt compelled to resign. A reasonable woman would have felt compelled to report Eddy's alleged post-July 7 harassment to her supervisors. Therefore, we find that the district court did not err in granting summary judgment on Woods' constructive discharge claim.

10

**V.    CONCLUSION**

Woods has not raised a genuine issue of fact on the prompt remedial action element.    Therefore, her hostile working environment claim under both Title VII and Louisiana statutory law fails as a matter of law. The constructive discharge claim also fails as a matter of law.  Therefore, the district court's judgment is AFFIRMED.

11