United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 27, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 05-31134

))))))))))))))))))))))))))))

RENE LEMAIRE

       Plaintiff-Appellant

   v.

STATE OF LOUISIANA, THROUGH THE LOUISIANA DEPARTMENT
OF TRANSPORTATION AND DEVELOPMENT

       Defendant-Appellee

---

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:05-CV-0775

---

Before BARKSDALE, DeMOSS and PRADO, Circuit Judges.

PRADO, Circuit Judge:

This is an appeal from a district court's order granting summary judgment on an employee's claims of sexual harassment and retaliation under Title VII. For the reasons that follow, we AFFIRM IN PART and REVERSE IN PART the district court's decision and REMAND for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff-Appellant Rene LeMaire ("LeMaire") began working as a Bridge Operator 2 for Defendant-Appellee State of Louisiana, Department of Transportation and Development ("LaDOTD") in March

2001. His job consisted of operating power-driven drawbridges and performing or overseeing preventative maintenance on the drawbridges. Milton Endres ("Endres") was the Bridge Operator Foreman, and Rodney Jones ("Jones") was an Engineering Technician. Both held supervisory roles over LeMaire.

In November 2001, LeMaire and his friend Mitzi Doiron ("Doiron"), who was dropping him off at work, ran into Endres. Doiron had known Endres for years, and they began to talk. According to Doiron, Endres told them that he had been molested as a child, that he had molested Doiron's ex-husband when he was a child, and that Doiron's ex-husband had not always been opposed to the molestation. Endres further elaborated on his sex life with his wife, how he enjoyed being close to other men, and his gay friends, who had also been molested. Doiron and LeMaire asked Endres to stop talking about these issues and tried to change the topic of conversation, but to no avail.

Doiron further states in her affidavit that LeMaire told her in February 2002 that Endres told him about being with gay men who were having sex at Mardi Gras. LeMaire was very upset about having to listen to Endres' sexually oriented comments.

On June 15, 2002, LeMaire claims he was subjected to derogatory comments by Endres. Endres also allegedly told LeMaire that he (Endres) would make it impossible for LeMaire to transfer, so the only way LeMaire could get away would be to quit. Endres then ordered LeMaire to spray herbicide on a large

2

area of the bank and lawn.  Believing this order was in retaliation for having objected to Endres' sexually explicit stories, LeMaire left the job site to report the conduct to Jones.

LeMaire told Jones, who was Endres' supervisor, about the harassment and retaliation and that he intended to quit.  Jones persuaded LeMaire to stay on and to file a grievance alleging "unfair/unjust treatment" instead of a formal complaint of sexual harassment.  On June 18, 2002, LeMaire received a letter from Jones concluding that, after investigation, there was no "conclusive evidence" of misconduct by Endres and that Endres had been told to act in a professional and courteous manner.  On June 28, 2002, LeMaire was suspended for two days without pay by Terri Robison, District Maintenance Engineer, for refusing to spray herbicide as directed by Endres and for leaving the station without authorization.  The letter, however, states that the incident occurred on April 15, 2002, even though affidavits from both parties put the event on June 15, 2002.

Endres claims that, on July 19, 2002, he found LeMaire asleep in the swing bridge house.  LeMaire asserts that he was not asleep and was sitting up and working when Endres burst in on him.  Several co-employees of LeMaire stated that LeMaire told them he was concerned that Endres had caught him sleeping on the job.  LeMaire denies admitting to his co-employees that he was sleeping.

3

On July 25, 2002, Rhonda Boudreaux, an LaDOTD employee, reported that one of the bridges was unmanned. LeMaire admits that the bridge was his responsibility and that he had accidentally overslept by four hours. By the time he got in, a replacement had filled his spot, and Endres told LeMaire to mow the grass around the bridge instead. LeMaire refused. He asserts that it was raining so hard that day that mowing would have been impossible.

LeMaire was suspended for thirty days with pay beginning August 5, 2002, pending an investigation into his conduct. On August 6, 2002, LeMaire received a letter from Terri Hammack ("Hammack")[1] informing him that Hammack was recommending him for termination. The grounds for termination included sleeping on the job on July 19, being late on July 25, and refusing to mow the grass on July 25. The letter also noted LeMaire's prior two-day suspension for insubordination and leaving without authorization. A meeting was set for August 13, 2002, to give LeMaire an opportunity to respond to these allegations.

LeMaire and his attorney attended the meeting on August 13, at which time LeMaire presented an affidavit refuting the grounds for his termination. On August 15, 2002, Hammack again wrote to LeMaire to inform him that he would be terminated for the same

---

[1] Although it is not explicitly stated in the record, it appears that Terri Robison and Terri R. Hammack are the same person.

4

reasons stated in the August 6 letter.

## II. PROCEDURAL HISTORY

LeMaire filed suit against LaDOTD on October 10, 2003, asserting claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3 (2000), as well as assault and intentional infliction of emotional distress under Louisiana state law. LaDOTD filed a motion to dismiss, which was denied by the district court. LaDOTD then filed a motion for summary judgment on October 8, 2004. In a single page order on October 6, 2005, the district court summarily granted LaDOTD's motion, stating that "written reasons" for its decision would be "filed at a later date." Written reasons have never been filed, and LeMaire appealed the district court's order on November 4, 2005. LeMaire has appealed only his Title VII claims. As a result, we do not consider his state law claims of assault and intentional infliction of emotional distress.

## III. JURISDICTION

Although no judgment has ever been entered in this case, we have jurisdiction over this appeal under 28 U.S.C. § 1291. Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, a judgment following an order on a summary judgment motion must be set forth in a separate document. However, if a separate judgment is required but not entered, judgment is deemed entered

5

150 days after the order.  FED. R. CIV. P. 58(b)(2)(B).  In this case, then, judgment was deemed entered 150 days after October 6, 2005, which was March 5, 2006.  Although LeMaire filed his appeal before that date, Rule 4(a)(2) of the Federal Rules of Appellate Procedure provides that an appeal filed after a court's order but before the entry of judgment is treated as filed on the date of and after the entry of judgment.  Therefore, we deem final judgment entered and LeMaire's appeal timely filed.  As a result, we have jurisdiction over this appeal.

## IV. DISCUSSION

We review a district court's order granting summary judgment de novo.  Morris v. Equifax Info. Servs., L.L.C., 457 F.3d 460, 464 (5th Cir. 2006).  Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622, 624 (5th Cir. 2006).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant.  United Fire & Cas. Co. v. Hixson Bros., Inc.,

453 F.3d 283, 285 (5th Cir. 2006).  However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

Complicating our review of this case is the fact that the district court gave no reasons for its decision.  While findings of fact and conclusions of law are not necessary, as our review is de novo, we have emphasized in the past that such findings and conclusions are "often quite helpful for appellate review." Thomas v. N.A. Chase Manhattan Bank, 994 F.2d 236, 241 n.6 (5th Cir. 1993) (internal quotation marks omitted).  Indeed, in this case, such an analysis would have been beneficial as the pleadings and arguments of the parties are less than clear. However, because our review is not limited to the district court's analysis, we may affirm the district court's decision on any basis presented to the district court.  Id. at 241.  We, therefore, turn first to LeMaire's sexual harassment claims.

A.    Sexual Harassment

LeMaire asserts that the district court erred in granting LaDOTD's motion for summary judgment on his sexual harassment claims because he created a genuine issue of material fact regarding whether Endres had sexually harassed him.  As noted in the previous section, we may only affirm an order granting summary judgment on a basis that was presented to the district

7

court.  See id.  This is in keeping with our precedent that arguments not raised before the district court are waived and cannot be raised for the first time on appeal.  See Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005), cert. denied, 126 S. Ct. 1033 (2006).  We therefore consider LaDOTD's motion for summary judgment.

The only argument regarding sexual harassment raised in LaDOTD's motion is to simply deny that Endres made the allegedly offensive comments and include affidavits from other LaDOTD employees stating that Endres never made inappropriate remarks to them.[2]  LeMaire's evidence on this point consists of affidavits from himself and Doiron describing the alleged sexually harassing comments made by Endres.  With this evidence, LeMaire has clearly created a genuine issue of material fact regarding whether or not the allegedly harassing conversations took place.  Therefore, the district court's decision to grant summary judgment on LeMaire's sexual harassment claims was erroneous, and we must reverse it.

The dissent in this case would affirm the district court because (1) there was no evidence that the harassment was because

_____

[2] LaDOTD's motion also pointed out that LaDOTD had a workplace harassment policy; however, that is irrelevant to the issues actually presented on summary judgment.  Had LaDOTD raised an Ellerth/Faragher defense, such evidence might prove helpful, but since LaDOTD never filed an answer in this case, it has raised no affirmative defenses.  See Wyatt v. Hunt Plywood Co., 297 F.3d 405, 409 (5th Cir. 2002) (describing Ellerth/Faragher defense as requiring evidence that employer exercised reasonable care to prevent and correct sexual harassment and that employee unreasonably failed to take advantage of those measures).

8

of LeMaire's sex under the same-sex harassment standard; and (2) there was no evidence that the harassment was severe and pervasive enough to constitute a hostile working environment. LaDOTD's motion for summary judgment, however, never raised those issues. Our precedent is clear that "[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." Russ v. Int'l Paper Co., 943 F.2d 589, 591 (5th Cir. 1991) (per curiam).

Here, LaDOTD did not mention "same-sex harassment" or "hostile work environment" in its motion for summary judgment. Instead, it filed a bare-bones motion that failed to cite to any legal precedent or standards regarding sexual harassment. This is insufficient to put LeMaire on notice that he needed to produce evidence on those issues. While the dissent assumes that LeMaire has no further evidence to support those elements of his claim, we cannot do so because LeMaire was never under an obligation to produce such evidence. Therefore, we must reverse this portion of the district court's decision.[3]

## B.   Retaliation

---

[3]   As a result of the above discussion, we make no comment about whether the alleged comments meet the threshold of same-sex harassment required by Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998), or whether they created a hostile work environment as described by Meritor Savings Bank FSB v. Vinson, 477 U.S. 57 (1986). Those issues were never raised in the briefing before the district court, addressed in the opinion of the district court, or briefed before this court.

We next address LeMaire's retaliation claim.  Pursuant to Title VII, an employer may not discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3.  Retaliation claims under Title VII are governed by the familiar three-step McDonnell Douglas test. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Under that test, an employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation.  Septimus, 399 F.3d ay 608.  To establish a prima facie case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.  Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).  If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  Baker v. Am. Airlines, Inc., 430 F.3d 750, 754-55 (5th Cir. 2005).  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.  Id. at 755.

10

After combing through the record in this case, we have identified four different allegations of retaliation raised by LeMaire: (1) Endres' order to spray herbicide on June 15, 2002; (2) other acts of retaliation referenced generally by LeMaire, but not specifically identified; (3) LeMaire's two-day suspension without pay; and (4) LeMaire's termination. We now consider how these claims fare under the McDonnell Douglas burden-shifting analysis.

### 1. Order to Spray Herbicide

In his affidavit in response to LaDOTD's motion for summary judgment, LeMaire claims that Endres ordered him to spray herbicide on June 15, 2002, in retaliation for LeMaire's rejection of Endres' sexual advances. To satisfy his prima facie obligation, LeMaire must produce evidence that he engaged in a protected activity. See Harvill, 433 F.3d at 439. At the time of Endres' order, LeMaire had not yet complained to Jones of Endres' conduct, so the only arguable protected activity was LeMaire's actual rejection of Endres' advances. LeMaire, however, provides no authority for the proposition that rejecting sexual advances constitutes a protected activity for purposes of a retaliation claim under Title VII. See Frank v. Harris County, 118 F. App'x 799, 804 (5th Cir. 2004) (unpublished) (affirming summary judgment on retaliation claim when only protected activity was "express rejection" of sexual advances). We,

11

therefore, affirm the district court's order granting summary
judgment to the extent that LeMaire argues that Endres' order to
spray herbicide was retaliatory.[4]

## 2.    Other Acts of Retaliation

Throughout his complaint, affidavit, and briefing, LeMaire
makes vague references to other actions taken by Endres in
retaliation for LeMaire's protected conduct.  (See LeMaire Compl.
¶ 7(3); LeMaire Aff. ¶ 3 [stating Endres retaliated by assigning
LeMaire to "numerous unpleasant duties" outside of LeMaire's job
description and requiring LeMaire to work multiple shifts at
different bridge locations]; Doiron Aff. at 5 [stating Endres
gave LeMaire all the "hard and dirty jobs"].)  The parties failed
to conduct any discovery, so it is unclear to what specific
actions LeMaire is referring.

LaDOTD did not move for summary judgment on these other acts
of retaliation in its motion for summary judgment nor did it
reference them on appeal; therefore, LaDOTD cannot be entitled to
summary judgment on those issues.[5]  Further, because the district

_____

[4] LaDOTD did not move for summary judgment regarding Endres'
order that LeMaire spray herbicide on the ground that it did not
qualify as an adverse employment action.  We, therefore, do not
consider whether this activity satisfies the adverse employment
action standard recently set by the Supreme Court in Burlington
Northern & Santa Fe Railway Co. v. White, __ U.S. __, 126 S. Ct.
2405 (2006).

[5]  The dissent is correct that LaDOTD did reference the
other acts of retaliation in its motion; however, the reference
was simply an acknowledgment that LeMaire had asserted those
claims.  LaDOTD never put forward an argument in favor of summary

12

court did not issue a written opinion explaining its reasons for granting summary judgment, we do not know if the district court considered these claims and, if it did, why the district court found them lacking. Given the new legal precedent, <u>see</u> <u>Burlington Northern</u>, 126 S. Ct. at 2414-15, the lack of summary judgment briefing, and the vagueness in the evidence, we reverse this portion of the district court's order and remand for further consideration.

### 3. Suspension Without Pay

The next alleged act of retaliation we consider is LaDOTD's decision to suspend LeMaire for two days without pay for refusing to spray herbicide as ordered by Endres and leaving the job site. LeMaire has satisfied his prima facie case in this instance. His report to Jones is considered a protected activity. <u>See</u> <u>Green v. Adm'rs of Tulane Educ. Fund</u>, 284 F.3d 642, 657 (5th Cir. 2002) (finding employee's complaint of harassment to head of personnel department was a protected activity). LeMaire's suspension is an adverse employment action, as a two-day suspension without pay might have dissuaded a reasonable employee from making a charge of discrimination. <u>See</u> <u>Burlington N.</u>, 126 S. Ct. at 2415. Further, the timing of the suspension--approximately two weeks after LeMaire's report of harassment--suggests a causal

_____

judgment on those claims, nor did it provide a legitimate, non-retaliatory reason why LeMaire was assigned to the allegedly unpleasant and demeaning duties.

connection.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995) (noting that timing can be a "significant, although not necessarily determinative, factor").  And, as discussed below, the fact that LeMaire left his job on June 15 in order to make a report of harassment, and was subsequently punished for leaving the job site, is also evidence of a causal connection.

Turning then to LaDOTD's articulation of a legitimate, non-retaliatory reason for the suspension, LaDOTD claims that it suspended LeMaire because he refused to spray the herbicide as ordered by Endres and left the job site without authorization. This is a legitimate, non-retaliatory reason for taking an adverse employment action.  See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004) (finding an employee's insubordinate behavior and failure to perform duties satisfactorily a legitimate, non-retaliatory reason).  It is thus incumbent on LeMaire to show that this reason was a pretext for retaliation.

LeMaire asserts that he left work without spraying the herbicide as requested because he was making a report to Jones about Endres' sexually harassing behavior.  This presents an interesting legal question regarding whether and under what circumstances an employee may refuse to perform his job duties in order to engage in protected activity.  We need not decide that issue, however, because there are factual disputes concerning

14

this claim as well.

For one, the letter suspending LeMaire refers to an incident on April 15, 2002, while the actions described by the parties took place on June 15, 2002. Further, it is not clear whether LeMaire did not spray the herbicide because he was making a report to Jones about Endres or whether he simply refused to obey Endres' order and later decided to report Endres' behavior. Also, the letter from Hammack suspending LeMaire does not indicate that Hammack interviewed anyone other than Endres in reaching her decision. Evidence of Endres' specific involvement in the decision would be significant, since Endres had the greatest motivation to retaliate against LeMaire. See Long v. Eastfield College, 88 F.3d 300, 307-08 (5th Cir. 1996) (assuming on appeal that the decision-maker merely rubber-stamped a termination recommendation made by a person with a retaliatory motive).

As a result of the legal and factual issues presented, we cannot say there is no genuine issue of material fact regarding LeMaire's claim that his two-day suspension was retaliatory. Therefore, we reverse the order of the district court on this point.

### 4. Termination

LeMaire's final claim is that his termination was in retaliation for his protected activity. Beginning with his prima

15

facie case, we note that LeMaire did engage in protected activity by reporting Endres' conduct to Jones and LeMaire did receive an adverse employment action. There is some question as to whether LeMaire has produced sufficient evidence of a causal connection, but for purposes of this opinion, we will assume that he has.

LaDOTD asserts that it terminated LeMaire's employment based on the culmination of various infractions, including sleeping on the job on July 19, being four hours late to work on July 25, and refusing to mow the grass on July 25. Job performance is a legitimate, non-retaliatory reason for termination. See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002) (concerning national origin discrimination claim).

The burden, therefore, shifts back to LeMaire to demonstrate that LaDOTD's legitimate reason is actually a pretext for retaliation. Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions. See Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 126 S. Ct. 1027 (2006); Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001). Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones. See Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) (stating that "even an incorrect belief that an employee's performance is inadequate" is a legitimate reason). Therefore, LeMaire must do more than simply argue that LaDOTD made an incorrect decision.

16

Here, LaDOTD was presented with conflicting stories regarding whether LeMaire was sleeping on the job on July 19. Endres asserted LeMaire was sleeping, and four of LeMaire's co-employees claim LeMaire told them he was sleeping. Despite LeMaire's denial of these actions, we will not second-guess LaDOTD's decision to disbelieve LeMaire's explanation, given the conflicting factual accounts. Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext. See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact.").

As for LeMaire's conduct on July 25, he admits to being late and not mowing the grass, but attempts to excuse his refusal to mow based on the weather. Presumably, LeMaire presented this information to Hammack at the August 13 meeting, and it was considered by LaDOTD in making its decision. Again, LeMaire must do more than just dispute the underlying facts and argue that LaDOTD made the wrong decision in order to survive summary judgment. See Bryant, 413 F.3d at 478 (stating that the fact that an employer's investigation reaches the wrong conclusion does not establish an improper motivation).

Therefore, LeMaire has failed to create a genuine issue of material fact regarding whether LaDOTD's decision to terminate him was a pretext for retaliation. Consequently, we affirm that

17

portion of the district court's order.

## C.   Race Discrimination

Out of an abundance of caution, LaDOTD also moved for summary judgment as if LeMaire had brought a race discrimination claim, even though LeMaire's complaint made no mention of race. On appeal, LeMaire contends that inclusion of race discrimination arguments in LaDOTD's motion for summary judgment somehow tainted the district court's consideration of the issues.  We disagree.

First, there is no evidence, other than speculation, that the district court was somehow misled by the argument concerning race discrimination.[6]  Second, LeMaire has provided this court with no precedent for holding that an overbroad summary judgment argument can render an entire decision faulty.  And third, we have now had the opportunity to conduct a de novo review of the summary judgment motion, unclouded by any concern of race discrimination; therefore, any error has been rendered harmless. As a result, we will not reverse the district court's judgment on these grounds.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order as it relates to LeMaire's retaliation claim regarding Endres' order to spray herbicide on June 15, 2002, and LeMaire's

---

[6]  Of course, given the district court's lack of written reasons for its ruling, we recognize that such evidence may be hard to come by.

18

termination.  We REVERSE the remainder of the district court's order and REMAND for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

**DeMOSS, Circuit Judge, concurring in part, dissenting in part.**

Because LeMaire was unable to establish a prima facie case of sexual harassment, and because LaDOTD articulated legitimate non-retaliatory reasons to justify its actions, I would affirm the district court's order granting summary judgment in its entirety. Consequently, I concur where the majority has affirmed summary judgment on two of LeMaire's retaliation claims, and respectfully dissent with regard to the rest.

## I.

As the majority states, we review orders granting summary judgment de novo, applying the same standards as the district court. *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

To determine if LaDOTD is entitled to judgment "as a matter of law," *id.*, we must first look to the law applicable to the claims asserted. *Hood v. Sears Roebuck and Co.*, 168 F.3d 231, 232 (5th Cir. 1999); *see also Meinecke v. H & R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995) ("First, we consult the applicable law to ascertain the material factual issues."). We do not consider the pleadings and affidavit testimony in a vacuum. Consequently, to determine if LaDOTD is entitled to summary judgment we must first consult the applicable law to determine the factual issues that will be material. *See Hood*, 168 F.3d at 232. LeMaire complains of sexual harassment and retaliation under Title VII. Therefore, we must evaluate his claims in light of the applicable legal standards set forth for Title VII claims.

The legal standard for a Title VII same-sex sexual harassment claim is set forth in *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75 (1998). The standard for a Title VII retaliation claim is set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and its progeny, *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). I recognize that LeMaire has not adequately argued the applicability of

these cases below or before this Court. However, his failure to recognize the applicable law does not absolve him from meeting the evidentiary burden it places upon him.[1]

## A. Sexual Harassment

LeMaire may establish a Title VII violation by proving that he was subjected to harassment that created a hostile or abusive working environment. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). To prove that he was subjected to a hostile work environment LeMaire must establish the following five elements:

> (1) [LeMaire] belonged to a protected class; (2) [LeMaire] was subject[ed] to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a

---

[1]

The majority does not discuss whether Endres' comments are actionable because "[t]hose issues were never raised in the briefing before the district court." Majority Op. at _____ n.3. However, LeMaire did raise Title VII sexual harassment and retaliation claims in his complaint, and LaDOTD moved for summary judgment because LeMaire could not meet the applicable evidentiary burden. "We may affirm a grant of summary judgment on any ground raised to the district court and upon which both parties had the opportunity to present evidence." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 n.1 (5th Cir. 1999). Because Title VII was the ground for relief raised in the district court, and one ground raised in the summary judgment motion was LeMaire's failure to meet Title VII's evidentiary burden, we can affirm. Further, both parties have had ample opportunity to present evidence and arguments on the applicable law.

22

"term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[2]

*Id.* at 298.

Also, because LeMaire alleges harassment by a member of the same sex, he has the additional burden to "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." *Oncale*, 523 U.S. at 81 (internal quotation marks and ellipses omitted). LeMaire can make that showing if he can (1) demonstrate Endres made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual"; (2) demonstrate that Endres was "motivated by general hostility to the presence of members of the same sex in the workplace"; or (3) "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002) (internal quotation marks omitted).

LeMaire alleges that Endres sexually harassed him by subjecting

---

[2] This Court has held that the fifth element is not required when the alleged harasser is a supervisor. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

23

him to "continuous, unwelcome, open, obvious, and pervasive incidents of sexual harassment." The only evidence LeMaire presented concerning harassment was contained in affidavits from himself and Mitzi Doiron.

In his self-serving affidavit LeMaire only references the alleged sexual harassment in paragraphs two and eleven. These paragraphs contain vague conclusory allegations that Endres made inappropriate sexual comments in LeMaire's presence. The affidavit does not state how often the alleged harassment occurred or give details about any particular encounter. Doiron's affidavit, on the other hand, details one admittedly inappropriate conversation she witnessed between Endres and LeMaire; it also states that LeMaire claimed there were other such conversations.

This evidence does not establish a prima facie case because, among other things, it fails to show the alleged harassment was based on sex. *See Woods* 274 F.3d at 298. That element requires LeMaire to show he was exposed to harassment that "members of the opposite sex were not." *See Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir. 2002) (approving the district court's statement of that rule). LeMaire has not presented any evidence that Endres made sexual comments to him because of his gender, or evidence that Endres did not

24

make the same comments to women. The most detailed evidence of the alleged harassment – Dioron's affidavit – details an inappropriate conversation that Endres had with both LeMaire and Ms. Doiron. This evidence indicates that Endres discussed his sexual encounters in the presence of both genders, and supports the conclusion that he did not single out LeMaire because of his sex.

Additionally, LeMaire has not shown that the alleged harassment affected a term, condition, or privilege of his employment. *See Woods* 274 F.3d at 298. "Conduct sufficient to create a hostile working environment must be severe or pervasive." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). This Court also considers "the degree to which the conduct is physically threatening or humiliating." *Id.* The conversation alleged by LeMaire was clearly inappropriate, but he does not allege that Endres made any physical threats. Further, LeMaire's conclusory allegations do not specify how often the alleged harassment occurred.

"A recurring point in [our] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of

employment.'" ***Faragher v. City of Boca Raton***, 524 U.S. 775, 788 (1998) (citations omitted). The offhand comments made during the isolated incidents alleged by LeMaire simply do not rise to the level of actionable sexual harassment. *See id.* (noting that "sporadic use of abusive language, gender-related jokes, and occasional teasing" are not actionable)*; see also Shepherd*, 168 F.3d at 872, 874 (holding that offensive comments accompanied by touching that occurred over a period exceeding one year did not affect a term, condition, or privilege of employment); *cf. Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 435-36 (5th Cir. 2005) (finding an actionable hostile work environment where the alleged harrasser kissed the plaintiff, touched her breasts and patted her buttocks "numerous times" *and* made inappropriate comments).

It is clear, as the majority points out, that some factual disputes exist. For example, LaDOTD argues that the alleged offensive conduct never occurred. But only disputes that can affect the outcome under the applicable law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed facts in this case do not affect the outcome. Even assuming that the offensive conduct

26

occurred, that conduct does not rise to the level of actionable sexual harassment under the legal standards discussed above. As a result, the dispute about whether the conduct occurred is not a dispute about a material fact. *See id.* Because no genuine issues of fact exist, and because LeMaire failed to establish a prima facie case of sexual harassment as required, I would affirm.

## B. Retaliation

The majority identifies four different allegations of retaliation asserted by LeMaire. I agree with the majority that summary judgment is appropriate regarding LeMaire's retaliation claims involving Endres' order for LeMaire to spray weeds and LeMaire's ultimate termination. LaDOTD claims LeMaire was terminated for a number of reasons including his sleeping while on duty, refusing to perform job duties such as spraying weeds and mowing grass, and arriving late for work. I believe, as the majority cogently explained, that LeMaire has failed to show those reasons to be pretext. *See, e.g., Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002).

Unlike the majority, however, I would also hold that summary judgment is appropriate with regard to LeMaire's remaining claims. Even

27

if we assume that LeMaire has established a prima facie case on his other claims of retaliation, and I seriously doubt that he has, LaDOTD has responded by submitting affidavits establishing legitimate non-retaliatory reasons for its actions. LeMaire has not shown those reasons to be prextext, so I would affirm.

Regarding LeMaire's claim that he was suspended in retaliation for reporting the alleged misconduct to a supervisor, LaDOTD responds that it was justified in suspending LeMaire because he failed to perform required job duties. "The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action." *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). Under the applicable framework, the burden then shifts to LeMaire and he can avoid summary judgment if he can demonstrate a genuine issue of material fact "that the stated reason is actually a pretext for retaliation." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

In order to show pretext, LeMaire must present evidence that he would not have been suspended "but for" the fact he filed the complaint. *See Septimus*, 399 F.3d at 608. He has failed to present such evidence,

and therefore summary judgment is appropriate. *See* FED. R. CIV. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The majority is concerned with legal and factual issues that, in its view, preclude summary judgment. Regarding the majority's concern whether an employee may refuse to perform job duties in order to engage in protected activity, I find that an interesting theoretical issue, but irrelevant to determining if LeMaire has met his burden to offer specific facts indicating that "but for" his complaint, he would have been suspended. *See Septimus,* 399 F.3d at 608. Likewise, the majority's other concerns do not directly relate to LeMaire's burden to create a genuine issue of material fact regarding pretext. I agree that it would be nice to know, for example, if Endres was involved in the decision to suspend LeMaire. Such evidence would be significant in finding pretext. However, it was LeMaire's burden to produce such evidence and he has utterly failed to do so.

Regarding LeMaire's vague assertions of "other" acts of retaliation,

29

even if LeMaire has asserted a prima facie case of retaliation,[3] he has not shown LaDOTD's legitimate non-discriminatory reasons for its actions to be pretext. The poor work performance cited by LaDOTD is a legitimate non-discriminatory reason for *discharge*. *Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 326 (5th Cir. 2002) (emphasis added). It would clearly also be a legitimate reason for the lesser penalty of assigning LeMaire to particular less-desirable job tasks. Further, LeMaire has failed to create a genuine issue of material fact regarding pretext.

---

[3] Under the majority's own reasoning LeMaire has failed to assert a prima facie case here. In its discussion of the order to spray herbicide, the majority found that LeMaire failed to provide authority for the proposition that merely rejecting sexual advances constitutes a protected activity. Majority Op. at ____. Because the order to spray herbicide occurred before LeMaire complained to Jones (a protected activity) the majority found that LeMaire failed to establish a prima facie case. *See id.*

Likewise, the "other" allegations of retaliation cited by the majority also appear to be based on acts that occurred prior to LeMaire complaining to Jones. *See* Compl. at ¶ 7(3) (alleging assignment to unpleasant job duties after rejecting the advances, but not alleging those assignments after complaining to Jones); LeMaire Aff. at ¶ 3 (same); *see also* Doiron Aff. at 5 (recounting that Endres gave LeMaire "hard and dirty jobs" because he was not interested in gay sex; but not claiming the retaliation was after complaining to Jones). None of these acts are alleged to have occurred after LeMaire complained to Jones. Following the majority's sound reasoning from its discussion of the order to spray herbicide, LeMaire had not engaged in a protected activity at the time these events occurred. Thus, I would find that LeMaire has not established a prima facie case regarding these "other" acts of retaliation.

The majority concludes that LaDOTD cannot be entitled to summary judgment because it did not reference these "other" alleged acts of retaliation in its motion for summary judgment. On the contrary, LaDOTD's motion for summary judgment references the "other" acts alleged in LeMaire's complaint and cited by the majority. Motion at 2. (". . .plaintiff alleges he was assigned unpleasant duties outside of his described job description. . .in retaliation for rejection of defendant's advances."). Further, LaDOTD requests in its motion for summary judgment that LeMaire's retaliation claims be dismissed because he cannot meet his evidentiary burden. LaDOTD has clearly requested summary judgment on this ground, and because LeMaire cannot meet his burden to show LaDOTD's reasons are pretext, I would grant it.

LeMaire did not establish that he was subject to discrimination based on his sex, or that Endres' behavior affected a term or condition of his employment. He also failed to rebut with any evidence LaDOTD's legitimate non-discriminatory reasons for discharging him.

This Court has clearly established that a defendant's motion for summary judgment under Rule 56 is an appropriate vehicle for the district courts to use in weeding out of the litigation process those cases where

31

the plaintiff is not fully prepared to carry his burden of establishing facts and evidence sufficient to take his claim to a jury for resolution. In my view, the district judge did precisely what he was supposed to do by granting Defendant's motion for summary judgment. And with due respect for my colleagues who see it differently, I respectfully dissent from the majority's reversal of the district court's judgment.