Jose ARANGO, Plaintiff,

v.

TELEMUNDO EL PASO; KTDO Television; ZGS El Paso Television, L.P.; and ZGS Communications, Inc., Defendants.

No. EP–12–CV–326–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Signed Dec. 30, 2013.

Byron Calderon, El Paso, TX, for Plaintiff.

David R. Pierce, Pierce & Little, P.C., El Paso, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendants Telemundo El Paso; KTDO Television; ZGS El Paso Television, L.P.; and ZGS Communications, Inc.'s "Motion for Summary Judgment" (ECF No. 36) [hereinafter "Motion"], filed on June 3, 2013; Plaintiff Jose Arango's "Original Response to Defendants' Motion for Summary Judgment" (ECF No. 42), filed on July 3, 2013; and Defendants' "Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment" (ECF No. 43), filed on July 10, 2013, in the above-captioned cause. The Court granted the Motion on July 30, 2013, and now writes to explain its reasoning.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 2012, Plaintiff filed suit in the 448th Judicial District Court of El Paso County, Texas. Not. Removal 1, Aug. 17, 2012, ECF No. 1. After Defendants removed the case to the Court, Plaintiff filed his "First Amended Complaint" on October 12, 2012 (ECF No. 10), and his "Second Amended Complaint" on November 21, 2012 (ECF No. 25). Therein, he claims that Defendants violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") when they terminated his employment. Plaintiff first complained to Defendants about sexual harassment at the workplace in December 2010. Resp. Ex. A, at 7–8.

Plaintiff was employed by Defendants from 1999 through 2011. D.'s Answer & Affirm. Defenses P's First Am. Compl. 2, Nov. 2, 2011, ECF No. 14. Plaintiff worked as a Master Control Operator for Defendants during this time period. Resp. 2. Prior to 2006, Defendants only issued verbal warnings to employees for performance errors. Mot. Summ. J. 5, Ex. 27, at 2. After 2006, Defendants began to document performance errors of their employees. Mot. Summ. J. Ex. 27, at 2. Defendants assert that Plaintiff was "very careless and did not concentrate on his job." *Id.* Plaintiff received approximately

two performance write-ups in 2006 (representing five violations), one performance write-up in 2007 (representing two violations), one performance write-up in 2009 (representing four violations), and two performance write-ups in 2010 (representing five violations). *Id.* Exs. 1–7, 27.

Plaintiff further asserts that he was subjected to sexual harassment and discrimination in the workplace "due to his age, 54, and his national origin, Mexican." Pl.'s Second Am. Compl. 4. Plaintiff claims that he was sexually harassed by coworker Santiago Sanchez ("S. Sanchez") and that this harassment included "verbal harassment, unwanted physical contact, and demands for and consummation of physical acts between Plaintiff and S[.] Sanchez" at the workplace. *Id.* Plaintiff alleges that the sexual harassment began in early 2006 and ended in December 2010. Resp. Ex. A, at 3. Defendants assert that the sexual relationship between Plaintiff and S. Sanchez was consensual; Plaintiff denies that allegation. Mot. Summ. J. Ex. 27, at 5; Resp. Ex. A, at 3.

In light of the foregoing, Plaintiff complained to Human Resources Director Monic Diaz [1] and General Manager Lorena Castaneda in December 2010 after he alleged that S. Sanchez sexually assaulted him. Resp. Ex. A, at 7. Defendants conducted a three-day investigation into Plaintiff's complaint, which included interviews with both Plaintiff and S. Sanchez. Mot. Summ. J. Ex. 28, at 3. Defendants assert that Plaintiff told them that his relationship with S. Sanchez had been consensual at one point, but that it was no longer consensual. *Id.* Further, Defendants also report that Plaintiff stated during the interview that he did not want S. Sanchez to be fired, but rather that he no longer

wished to work contemporaneously with S. Sanchez. Mot. Summ. J. Ex. 27, at 6.

Following the investigation, both Plaintiff and S. Sanchez retained their positions. Mot. Summ. J. Ex. 27, at 6. Defendants claim to have adjusted Plaintiff's shifts after his complaint of harassment so that he and S. Sanchez would not be on duty contemporaneously; however, Plaintiff disputes Defendants' assertion. *Id.* After his complaint of sexual harassment, Plaintiff claims that Defendants "began to retaliate against Plaintiff for his having complained about the ongoing sexual harassment by scrutinizing his work performance" and increasing the severity of their discrimination against Plaintiff "due [to his] age, gender, and national origin." Pl.'s Second Am. Compl. 5. Plaintiff asserts that Defendants began "writing him up for false and contrived performance issues" in retaliation for his complaint of sexual harassment. *Id.* Following his complaint of sexual harassment, Defendants issued two work-performance notices, representing ten violations, to Plaintiff. Mot. Summ. J. Exs. 17–18. On March 4, 2011, Defendants terminated Plaintiff's employment based on his history of performance violations. *Id.* Ex. 27, at 7. Plaintiff thereupon filed this lawsuit.

## II. LEGAL STANDARD

### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be

---

**1.** Defendants' Human Resources Director is also referred to as Monic Heredia because she

changed her name over the course of Plaintiff's employment.

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir.1994) (quoting *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. 574, 586, 106 S.Ct. 1348 (1986), by "conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994). We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177).

## III. ANALYSIS

### A. Title VII

#### 1. Hostile Work Environment

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. 42 U.S.C. § 2000e et seq. (2006). The creation of a hostile work environment through harassment is a form of discrimination prohibited by Title VII. *Vance v. Ball State Univ.,* —— U.S. ——, 133 S.Ct. 2434, 2441, 186 L.Ed.2d 565 (2013). To prevail on a hostile-work-environment claim, a plaintiff must prove, among other things, that the harassment was based on his membership in a protected class. *See Septimus v. Univ. of Houston,* 399 F.3d 601, 611 (5th Cir.2005) (citing *Green v. Admin. of the Tulane Educ. Fund,* 284 F.3d 642, 655 (5th Cir.2002); *Woods v. Delta Beverage Grp.,* 274 F.3d 295, 298–99 (5th Cir.2001)).

Plaintiff alleges that harassment based on his age, gender, and national origin created a hostile work environment in violation of Title VII. Pl.'s Second Am. Compl. 4. However, Plaintiff's support for this claim consists only of conclusory statements that he was the victim of national-origin discrimination and that S. Sanchez "committed ... gender discrimination ... and discrimination over [his] national origin, culture and age." Resp. Ex. A, at 15. Plaintiff also states the following:

> [S. Sanchez] created a hostile work environment for me and his behavior towards me constituted discrimination based on my age and national origin because of these cultural factors and my age. I knew that at my age, should I lose my job, it would be very difficult to

get same or similar employment. I was constantly, deliberately, and systematically harassed, assaulted, and discriminated at work due to my gender, national origin and ethnicity, and age.

*Id.* While Plaintiff repeatedly employs terminology that arguably has legal significance, he fails to "designate 'specific *facts* showing that there is a genuine issue for trial.'" *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001) (emphasis added) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In fact, the record is totally devoid of any evidence that suggests that age, gender, or national origin affected Plaintiff's work environment.[2] Thus, as there is no evidence that any harassment directed toward Plaintiff was based on his membership in a protected class, the Court finds that Plaintiff's hostile-work-environment claim cannot survive summary judgment.

### 2. Supervisor Liability

■ An employer can also be held vicariously liable under Title VII for workplace harassment by its employees. The standard for such liability rests on the status of the harasser. *Vance*, 133 S.Ct. at 2439. If the harassing employee is a coworker of the victim, the employer is only liable if it was "negligent in controlling working conditions." *Id.* If, however, the harassing employee is the supervisor of the victim and the harassment results in a tangible employment action, the employer can be held strictly liable. *Id.* An employee qualifies as a supervisor only when the employer has "empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 2443 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). By narrowing the inquiry to whether the employee is empowered to take tangible employment actions, the Court in *Vance* stated that the issue "can very often be resolved as a matter of law before trial." *Id.* at 2450.

■ Plaintiff argues that Defendants are liable for the harassment by S. Sanchez because S. Sanchez sometimes served as Plaintiff's supervisor.[3] Resp. 2–3. In his affidavit, Plaintiff asserts that when supervisor Yessika Sanchez ("Y. Sanchez") was not present, S. Sanchez "would serve in a supervisory position." Resp. Ex. A, at 3. He alleges that S. Sanchez would perform Y. Sanchez's duties, including (1) assigning work schedules, (2) telling employees what to do and what not to do, (3) counseling employees on correcting errors, and (4) posting discrepancy entries on a tote board. *Id.* Plaintiff therefore suggests that S. Sanchez was a supervisor

---

**2.** A plaintiff cannot recover under Title VII for discrimination because of age or national origin if the plaintiff does not provide evidence that gives rise to a colorable claim. Here, Plaintiff does not offer any evidence that indicates that he was discriminated against because of his age or national origin.

**3.** In its "Order Granting Motion for Extension of Time" filed on July 1, 2013, the Court required the parties to address how the Supreme Court's recently decided cases of *Vance* *v. Ball State University*, —— U.S. ——, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013), and *University of Texas Southwestern Medical Center v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), affected the disposition of Defendants' Motion. Order Granting Mot. Extension Time, July 1, 2013, ECF No. 41. Regretfully, Plaintiff's counsel, to Plaintiff's detriment, elected not to address these cases, both of which bear upon the legal standard for the claims that Plaintiff alleges.

because he acted as a supervisor in Y. Sanchez's absence. *Id.*

Defendants argue that Plaintiff's allegations, even if taken as true, do not establish that S. Sanchez was Plaintiff's supervisor for Title VII purposes pursuant to *Vance.* Reply 6. Defendants argue that "none of the ... actions which Plaintiff attributes to S. Sanchez constitute tangible employment actions." *Id.* 7. Further, Defendants point to Plaintiff's statement that all of S. Sanchez's supervisory duties, except for the "purported firing," were done with "the knowledge and tacit approval of Defendants." *Id.;* Resp. Ex. A, at 3. Thus, Defendants argue that Plaintiff admits that the purported firing was not approved by Defendants, and as such Defendants had not empowered S. Sanchez to fire Plaintiff. Resp. Ex. A, at 3; Reply 7. The Court agrees with this assessment.

Plaintiff's characterization of S. Sanchez's employment duties do not indicate that S. Sanchez had the ability to effect a significant change in Plaintiff's employment status as required by *Vance.* Plaintiff alleges that S. Sanchez would assign work schedules, provide other employees with directions and counseling on errors, and post discrepancies on a board. Resp. Ex. A, at 3. However, none of these alleged supervisory duties create a genuine issue of material fact as to whether Defendants empowered S. Sanchez to take tangible employment action against Plaintiff. Rather, S. Sanchez's duties as listed by Plaintiff merely gave S. Sanchez the ability to direct a coworker's work activity—the exact responsibilities that the Supreme Court rejected as forming the basis for supervisory status in *Vance.* 133 S.Ct. at 2443; *see also McCafferty v. Preiss Enters., Inc.,* 534 Fed.Appx. 726, 731 (10th Cir.2013) (holding that directing crew members' day-to-day assignments is "precisely the type of 'direction over another's daily work' or 'ability to direct a co-worker's labor' that the Court rejected as forming the basis of supervisory status in *Vance* " (citing *Vance,* 133 S.Ct. at 2443)).

Notably, Plaintiff does allege that S. Sanchez "even purported to fire [him] once." Resp. Ex. A, at 3. However, Plaintiff admits that this "purported firing" was not done with the knowledge or approval of Defendants. *Id.* As such, Plaintiff fails to create a genuine issue of material fact regarding whether Defendants had "empowered [S. Sanchez] to take tangible employment actions against [him]." Thus, pursuant to *Vance,* no genuine issue of material fact exists as to whether Defendants are vicariously liable for S. Sanchez's alleged harassment.

### 3. Coworker Liability

In determining whether an employer is liable for harassment perpetuated by coworkers, courts apply a negligence standard. *Vance,* 133 S.Ct. at 2441. When a coworker harasses a plaintiff, "an employer is directly liable for an employee's unlawful harassment if it was negligent with respect to the offensive behavior." *Id.* (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 799, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "In order to satisfy that standard, the complainant must show that the employer knew or should have known of the offensive conduct but failed to take appropriate action." *Id.* at 2456 (internal citations omitted).

Plaintiff asserts that Defendants were "negligent in failing to provide adequate supervision of managers and employees, in that they permitted Y[.] Sanchez to supervise Plaintiff even as Plaintiff complained of ongoing sexual harassment and discrimination by S[.] Sanchez." Pl.'s Second Am. Compl. 4. Plaintiff also states in his affidavit that "Plaintiff's rejections of the sexual advances [from S. Sanchez]

were always known to Defendants."[4] Resp. 3. Defendants argue that "there is no evidence in the record to support Plaintiff's theory that Y. Sanchez was aware of" the alleged sexual harassment of Plaintiff by her husband. Reply 8.

Despite these assertions, Plaintiff provides no evidence to corroborate his allegation that Defendants were negligent in providing supervision and, more importantly, that Defendants "knew or should have known of the offensive conduct but failed to take appropriate action." *See Vance,* 133 S.Ct. at 2456. The Fifth Circuit has held that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary-judgment stage of an employment-discrimination case. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1) (2006). Here, Plaintiff provides only unsubstantiated assertions to support his argument that Defendants knew or should have known of the sexual harassment prior to December 2010.

Moreover, Plaintiff does not offer any evidence showing that Defendants failed to take appropriate action after they were made aware of the harassment. Nowhere does Plaintiff allege or provide facts that indicate to the Court that the sexual harassment continued after Plaintiff complained to Defendants in December 2010; indeed, Plaintiff admitted to Defendants that the sexual harassment by S. Sanchez stopped after Plaintiff's complaint. Mot. Summ. J. Ex. 23, at 3.

Defendants provide evidence in the form of a declaration from General Manager Lorena Castaneda that following Plaintiff's complaint of harassment, Defendants adjusted Plaintiff's shifts so that he and S. Sanchez would not be on duty contemporaneously. Mot. Summ. J. Ex. 27, at 6 ("I gave [Plaintiff] what he stated that he wanted to result from the investigation: not to share shifts with [S. Sanchez] anymore."). Plaintiff, on the other hand, alleges that he worked contemporaneously with S. Sanchez following his complaint of harassment. Resp. Ex. A, at 10–11. However, Plaintiff fails to provide evidence to support this allegation. Even taking Plaintiff's allegation as true, the fact that he and S. Sanchez worked contemporaneously does not prove that this schedule was implemented or required by Defendants. Again, Plaintiff's evidence is deficient in addressing the circumstances that might afford a fact finder the opportunity to resolve a genuine dispute of material fact.

Plaintiff also fails to create a fact issue as to whether Defendants knew of S. Sanchez's alleged harassment of plaintiff prior to his complaint of sexual harassment. Moreover, Plaintiff does not succeed in creating a genuine issue of material fact as to whether Defendants failed to take appropriate action once Defendants were aware of the alleged sexual harassment following Plaintiff's complaint of sexual harassment. Accordingly, the Court finds that summary judgment as to Plaintiff's Title VII claim is appropriate.

### B. Title VII Retaliation Claim

Title VII's antiretaliation provision prohibits discrimination by employers against employees because the employee "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a) (2006). To establish a retaliation claim, a plaintiff must show that

---

**4.** These two statements constitute the entirety of Plaintiff's arguments and evidence regarding this issue.

(1) he engaged in a protected activity as defined by Title VII, (2) he suffered a materially adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the plaintiff succeeds in putting forth a prima facie case, the burden then shifts to the defendant to show a legitimate, nondiscriminatory, or nonretaliatory reason for the challenged employment action. *Id.* "Once a defendant articulates such a reason, the inference of retaliation raised by the prima facie showing drops from the case." *Brimmer v. Shinseki*, No. 3:11–CV–1956–L, 2013 WL 4763947, at *8 (N.D.Tex. Sept. 5, 2013) (citing *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir.2001)).

■ "At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose." *Id.* "Title VII retaliation claims must be proved according to traditional principles of but-for causation, [which] requires proof that the unlawful retaliation would not have. occurred in the absence of the alleged wrongful action or actions of the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). Thus, in order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the defendant would not have taken the action but for the protected activity. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir.2013) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir.1996)).

### 1. Prima Facie Case

### a. Protected Activity

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir.2003) (citing *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir.2002)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). An employee's complaint to the head of personnel constitutes a protected activity. *See Green*, 284 F.3d at 657.

■ Here, Plaintiff complained to Human Resources Director Monic Diaz and General Manager Lorena Castaneda about the sexual harassment and discrimination in his workplace. Mot. Summ. J. Ex. 27, at 4. This qualifies as a protected activity.

### b. Adverse Employment Action

Plaintiff alleges that Defendants took multiple adverse employment actions against him, including (1) issuing performance write-ups about his work performance and (2) terminating him on March 4, 2011. Resp. Ex. A. The Fifth Circuit has traditionally found that "adverse employment actions include ... employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559. Additionally, the Supreme Court has expanded the definition of adverse employment action to include any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 54, 126 S.Ct. 2405).

Here, Plaintiff's termination in March 2011 clearly qualifies as an adverse employment action.

### c. Causal Connection

Lastly, Plaintiff must prove a causal connection between his complaint to De-

fendants about sexual harassment and his termination. Here, Plaintiff alleges that Defendants "began to retaliate against Plaintiff for his having complained about the ongoing sexual harassment by scrutinizing his work performance issues ... [and] writing him up for false and contrived performance issues," culminating in his termination. Pl.'s Second Am. Compl. 5–6.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *McCoy*, 492 F.3d at 562. Here, Plaintiff's employment was terminated in March 2011 (approximately four months after the protected activity), and he received several negative performance reviews in the interim period. Reply 10–13.

The Court will assume, without deciding, that Plaintiff has established a prima facie case of retaliation. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir.2004) ("[a]ssuming, without deciding" that a prima facie case of Title VII retaliation had been made where the pretext issue was ultimately dispositive).

### 2. Legitimate, Nonretaliatory, or Nondiscriminatory Reason

Once a plaintiff has established a causal connection between the complaint of sexual harassment and his termination, the burden shifts to the defendant to show a legitimate, nondiscriminatory, or nonretaliatory reason for the challenged employment action. In the instant action, Defendants assert that Plaintiff had a poor work record prior to his complaint of harassment and that he continued to perform poorly after making his complaint. Mot. Summ. J. 16–17, Exs. 1–7, 17–19, 27, 28. In support thereof, Defendants offer written notices of performance violations prior to Plaintiff's December 2010 complaint of harassment. *Id.* Exs. 1–7. The record indicates that Plaintiff had approximately two performance write-ups in 2006 (representing five violations), one performance write-up in 2007 (representing two violations), one performance write-up in 2009 (representing four violations), and two performance write-ups in 2010 (representing five violations) prior to his complaint of harassment. *Id.* Exs. 1–7, 17–19, 27.[5]

Additionally, Defendants provide a declaration from General Manager Lorena Castaneda with details of Plaintiff's work-performance violations. *Id.* Ex. 27. According to Castaneda, Defendants gave Plaintiff a written notice on November 18, 2010, that indicated that Defendants would cut his hours to part time or terminate his employment if his communication did not improve.[6] Defendants provided a final written warning to Plaintiff on December 6, 2010, again admonishing Plaintiff of the consequences outlined in the November 2010 notice. *Id.* Exs. 7, 27.[7]

---

**5.** Plaintiff claims that the performance write-ups from Y. Sanchez prior to his December 2010 complaint of harassment were in retaliation for his rejection of sexual advances from S. Sanchez, Y. Sanchez's husband. Resp. Ex. A, at 7–8. This allegation is not a component of Plaintiff's Title VII retaliation claim, since they occurred before Plaintiff's protected activity. Additionally, Plaintiff provides no evidence to support his statement or to dispute Defendants' claim that Y. Sanchez was actually unaware of the sexual nature of the interac-

tions between Plaintiff and S. Sanchez. *See* Mot. Summ. J. 16.

**6.** Defendants had previously censured Plaintiff for his lack of communication, including failing to fill out discrepancy reports, failing to report problems to others, and failing to relay information to the Master Control Operator taking over his shift. Mot. Summ. J. Ex. 27.

**7.** The December 6, 2010, final written warning occurred before Plaintiff's complaint of

Following Plaintiff's complaint of harassment in December 2010, Plaintiff received two performance write-ups (representing ten violations). *Id.* Exs. 17–18. In her declaration, Castaneda stated that Plaintiff "continued making the same mistakes about simple, everyday operations—as simple as writing something down on paper." *Id.* Ex. 27, at 6. Moreover, Defendants cite lack of honesty as another reason for discharging Plaintiff.[8]

Based on Plaintiff's record of written performance violations, including at least two final written warnings cautioning Plaintiff about possible termination, and the additional documented performance violations following these warnings, Defendants have satisfied their burden of showing a legitimate, nonretaliatory reason for Plaintiff's termination.

### 3. Pretext

"At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose." *McCoy,* 492 F.3d at 557 (internal citation omitted). The Court must determine whether Defendants' proffered nondiscriminatory reason for terminating Plaintiff—poor work performance—was actually the "real reason for [Plaintiff's] termination." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir.2002).

Plaintiff argues that the work-performance notices given to him after his complaint of sexual harassment demonstrate that Defendants' concerns are merely a pretext for retaliating against him. Further, Plaintiff asserts that his termination, which Defendants claim was a result of the culmination of these work-performance violations, was retaliatory.

The Court will assess each of Defendants' allegedly retaliatory actions in turn.

### a. Performance Correction Notice of February 8, 2011

Plaintiff received a Performance Correction Notice on February 8, 2011 ("February 8 Notice"), listing several "[p]erformance [t]ransgression[s]." Mot. Summ. J. Ex. 17, at 1. Plaintiff alleges that this Performance Correction Notice was retaliatory. Resp. Ex. A, at 10–12.

### i. Recording Wrong Commercial

The first "[i]ncident" listed on the February 8 Notice states that Plaintiff recorded an incorrect commercial on January 3, 2011. Mot. Summ. J. Ex. 17, at 1. Defendants also provide the "Discrepancy Re-

harassment. While Plaintiff does not provide a specific date for his complaint, he alleges that he complained approximately one week after a sexual-harassment incident on December 4, 2010. Resp. 7. Defendants provide evidence that Plaintiff's complaint occurred on December 14, 2010, well after the December 6, 2010, final written warning. Mot. Summ. J. 8, Exs. 7, 27. Plaintiff does not provide evidence to dispute this claim. In addition to the December 6, 2010 final written warning, Plaintiff also received a final written warning on February 25, 2011. *Id.* Exs. 7, 18.

**8.** In her declaration, Castaneda states that Plaintiff attempted to hide his mistakes and did not fill out discrepancy reports as required by his job. *Id.* Ex. 27, at 7. Further,

Monic Heredia's declaration cites a specific example of dishonesty that she states was the catalyst for Plaintiff's discharge. "When I arrived at the station on February 28, 2011, a client called. That particular client had paid to sponsor a news segment; therefore his commercial should have aired first. The client complained that his commercial did not air. I looked at the log, and saw that Jose Luis had initialed the log indicating that everything ran correctly." Heredia contacted Plaintiff to ask about the commercial. He indicated that everything had run correctly. However, when Heredia watched the station's recording of that portion of the news, she found that the commercial had not run. *Id.* Ex. 28, at 4–5.

port" for January 3, 2011, which contains a handwritten note that "[Plaintiff] recorded wrong spot." *Id.* at 3. While Plaintiff admits that the wrong commercial aired, he suggests that this occurred because "someone changed his work after he certified it was correct." Resp. Ex. A, at 10. He further alleges that he finds "it very suspicious that [he was] being accused of dubbing the ad wrong, when all of [his] safety nets were in place and [he] followed his own method of detection" and further finds it suspicious that his mistake was noticed so quickly. *Id.* Significantly, Plaintiff provides no other evidence, documentary or testimonial, that his work was tampered with in retaliation for his complaint of sexual harassment.

### ii. Inputting Wrong Commercial into Playlist

The second incident listed on the February 8 Notice states that, on January 6, 2011, Plaintiff input a commercial for Soriana into the playlist instead of that for E & M. Mot. Summ. J. Ex. 17, at 1. Plaintiff asserts that Defendants are "making up evidence as they go along to discredit [Plaintiff]" and that this mistake "only seems to take place when [his] shift is taken over by [S.]. or [Y.]. Sanchez." Resp. Ex. A, at 11. However, Plaintiff again provides no evidence other than his own statements to rebut the contents of the February 8 Notice.[9]

### iii. Failing to Report Which Promotion Feed Ran

Another incident listed on the February 8 Notice is Plaintiff's failure to report which promotion feeds ran during his shift on January 17, 2011. Mot. Summ. J. Ex. 17, at 1. Plaintiff argues that the individual "doing the logs" should have known which promotion feeds to air because it was "well-known and well-documented that [the company] did not get any promos from Telemundo on holiday" and that it would be impossible for him to ascertain what aired after his shift had ended. Resp. Ex. A, at 11. Moreover, Plaintiff asserts that the operator after him was S. Sanchez, who did not receive a work correction notice despite his failure to record which promotions ran during his shift. *Id.* However, Plaintiff once again does not provide evidence, other than his affidavit, on this point. On the other hand, Defendants' evidence indicates that Defendants censured Plaintiff because, while he reported that no promotion feed was received from Telemundo, he failed to note what ran in its place. Mot. Summ. J. Ex. 17, at 5.

### iv. Failing to Pass Information on to Next Operator

The February 8 Notice also lists an incident on January 31, 2011, where Plaintiff "did not pass information on to the next [o]perator about new policies." *Id.* at 1. Plaintiff asserts that this is an example of retaliation against him because the next operator was Y. Sanchez, and the information that he was supposed to pass on to her had originated with her. Resp. Ex. A, at 11.[10] Plaintiff further alleges that "De-

---

**9.** Plaintiff fails to provide evidence that would create a fact dispute on this issue, for example, (1) a log to indicate which commercial was input into the playlist, or (2) evidence that shows Y. Sanchez or S. Sanchez worked directly after Plaintiff. In his affidavit, Plaintiff notes that the Court should refer to the "Master Control Schedule" for January in order to determine who took over his shift on the day in question. Resp. Ex. A, at 10.

However, Plaintiff does not attach that schedule to his Response, nor does he provide the Court with the schedule in any other way.

**10.** Plaintiff's argument on this point is difficult to follow. He states the following: "My shift ran from 9:00 pm to 5:00 am. Yessika's shift began at 5:00 am. She was the 'next operator.' The information that is supposed to be passed on originated with Yessika. Yes-

fendants are making up evidence as they go along to discredit" him as a result of his complaint of sexual harassment. *Id.* Other than these statements in his affidavit, Plaintiff produces no evidence that tends to show that this incident was retaliatory.

### v. Failing to Save News Notes to the Back–Up Server

Finally, the February 8 Notice includes an incident on February 3, 2011, where Plaintiff "did not save the news notes to the back up server." Mot. Summ. J. Ex. 17, at 1. Plaintiff argues first that this discrepancy was caused by equipment malfunctioning as a result of a severe winter storm that day, not as a result of his performance. Resp. Ex. A, at 12. Second, he notes that "Defendants do not provide any evidence that shows that there was no back up" and that this "alleged mistake" took place when his shift was between Y. Sanchez's and S. Sanchez's shifts. *Id.* However, Plaintiff does not provide any evidence other than these allegations to corroborate his assertions.

### b. Performance Correction Notice of February 25, 2011

Plaintiff received another Performance Correction Notice on February 25, 2011 ("February 25 Notice"), which was designated a "Final Written Warning." Mot. Summ. J. Ex. 18, at 1. Plaintiff alleges that this Performance Correction Notice was also retaliatory. Resp. Ex. A, at 12–14.

### i. Failing to Look for Furniture Mart Advertisement

The first incident listed on the February 25 Notice is Plaintiff's failure to "look for a Furniture Mart spot that had been deleted off the se[r]ver but was on the shelf." Mot. Summ. J. Ex. 18, at 1. The description of this incident notes that the employ-ee working after Plaintiff found the physical copy on the shelf, "and the spots were made good." *Id.*

Plaintiff argues that the Furniture Mart advertisement was not scheduled to air during his shift. He also asserts that the spots were digitized correctly and aired at the correct times according to the logs of February 16, 2011, and February 17, 2011. Resp. Ex. A, at 12. Plaintiff does not provide the aforementioned logs, however, nor does he provide evidence other than his affidavit to support these claims.

### ii. Failing to Pass Information on to Next Operator

The February 25 Notice also states that, on February 21, 2013, Plaintiff did not pass information on to the next operator about Virgin Mobile commercials. Mot. Summ. J. Ex. 18, at 1. Plaintiff argues that he could not convey the specified information because the Daily Report Form from the previous operator, Samuel Acuna, was illegible. Resp. Ex. A, at 13; *see* Mot. Summ. J. Ex. 18, at 4. Plaintiff also claims that Acuna refused to tell him what the note said, instead telling Plaintiff to "just read it." *Id.* Again, Plaintiff does not provide any evidence other than his affidavit on this point.

### iii. Deleting Another Employee's Discrepancy Report

Another incident listed on the February 25 Notice states that Plaintiff "deleted [another employee's] discrepancy report before it was sent to him." Mot. Summ. J. Ex. 18, at 1. In his affidavit, Plaintiff directs the Court to a screenshot of the discrepancy report. Resp. Ex. A, at 13; *see* Mot. Summ. J. Ex. 18, at 7. Plaintiff claims that this screenshot is a "smoking gun of Defendants' treachery" because it

---

sika then complained that I did not pass the information on to the 'next operator,' but the next operator was she. Information was origi-nated by the person that supposedly did not get the new policy." Resp. Ex. A, at 11.

was taken at 7:00 a.m., two hours after Plaintiff's shift had ended. Resp. Ex. A, at 13; *see* Mot. Summ. J. Ex. 18, at 7. Plaintiff argues that he "did not delete any such report" and that the accusation is "a total fabrication." Resp. Ex. A, at 13.

### iv. Filling Out Discrepancy Reports Incorrectly

Lastly, the February 25 Notice notes that Plaintiff's discrepancy reports "[are] still not being filled out correctly." Mot. Summ. J. Ex. 18, at 1. Plaintiff argues that because Defendants failed to include an exhibit to substantiate this allegation, he is unable to refute it. Resp. Ex. A, at 14. Significantly, Plaintiff does not provide any evidence to demonstrate that he was filling out his discrepancy reports correctly, nor does he provide evidence that this accusation was a pretext for retaliation.

### c. Plaintiff Fails to Carry His Burden

 The vast majority of evidence that Plaintiff presents to demonstrate pretext consists of conclusory allegations that dispute the underlying facts of Defendants' decision to terminate him.[11] The Fifth Circuit has held that a plaintiff's own statements denying the allegations against him are insufficient to create a genuine issue of material fact as to pretext. *Jack-son v. Cal–Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir.2010) ("[The employee's] assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating him.");[12] *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir.2001) ("[The employee] cannot survive summary judgment merely because she disagrees with [the employer's] characterization of her disciplinary history."); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir.2007) ("Conclusory statements are not competent evidence to defeat summary judgment." (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992))). Here, Plaintiff does not provide any evidence other than his own affidavit to support his allegation that the performance write-ups following his complaint of sexual harassment were retaliatory.

The Court, therefore, concludes that Plaintiff does not create a conflict in substantial evidence on the question of whether Defendants would not have terminated his employment but for his complaint of harassment. Defendants provide a legitimate, nonretaliatory reason for Plaintiff's termination—his continued work-performance deficiencies—and Plaintiff fails to satisfy his burden to raise a genuine issue of

---

11. The Court notes that Plaintiff only succeeds in raising one possible issue of fact: whether or not he deleted another employee's discrepancy report as stated in his February 25 Notice. However, simply disputing the facts underlying an employer's decision is not sufficient to carry Plaintiff's burden at this stage. *See Sandstad*, 309 F.3d at 899 (citing *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir.2001)). Rather, "[e]ven an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee." *Haverda v. Hays Cnty.*, 723 F.3d 586, 596 n. 1 (5th Cir. 2013); *Sandstad*, 309 F.3d at 899. Here, the fact issue Plaintiff raises goes to the accuracy of Defendants' beliefs about Plaintiff's work performance, not whether Defendants were retaliating against Plaintiff for his sexual-harassment complaint.

12. The Fifth Circuit's recent decision in *Ion v. Chevron*, 731 F.3d 379 (5th Cir.2013), cites this proposition with approval. The court in that case explained that, in *Jackson*, "the only pretext evidence that the court considered in its analysis, besides [a] 'stray remark,' was the plaintiff's own statements denying the allegations [of sexual harassment]." *Id.* at 394. Ultimately deciding that *Jackson* was distinguishable from the facts in *Ion*, the court found summary judgment improper where the plaintiff provided "significantly more evidence" than "solely … his own statements denying [the] allegations [of his employer]." *Id.*

material fact as to whether this reason was pretextual.

### d. Temporal Proximity

Plaintiff also alleges that the temporal proximity of the Performance Correction Notices to his complaint of harassment suffices to prove retaliation. Resp. Ex. A, at 11–14. However, the Fifth Circuit has held that "timing standing alone is not sufficient" to carry a plaintiff's summary-judgment burden "absent other evidence of pretext." *Boyd v. State Farm Ins. Comps.*, 158 F.3d 326, 330 (5th Cir.1998) (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997); *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993)). Since Plaintiff does not offer any evidence from which a jury could infer that retaliation was the real reason for his termination, his temporal-proximity argument fails.[13] Moreover, the frequency of Plaintiff's work-performance corrections did not increase after his December 2010 complaint of sexual harassment: the number he received after the complaint is roughly consistent with the number he received prior to filing his complaint.

### C. Age Discrimination

The ADEA declares it "unlawful for an employer to ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). "To establish an ADEA claim, 'a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009)).

When bringing an age-discrimination claim, "a plaintiff must first prove a prima facie case of discrimination." *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir.2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). In order to prove a prima facie case of age discrimination, a plaintiff must prove that (1) he was over the age of forty when the discrimination occurred; (2) he was qualified for the position; (3) he was terminated despite his qualifications; and (4) he was replaced by someone outside his protected class, replaced by someone younger, or otherwise discharged because of age. *Id.*

Once a plaintiff puts forth a prima facie case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir.2007) (citing *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir.2006)). Then, "the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir.2004) (citing

---

**13.** Although temporal proximity sufficed earlier to prove Plaintiff's prima facie case, the Fifth Circuit has held that it does not suffice to prove but-for causation. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir.2007); *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir.1996) ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly.... The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent.").

*McDonnell· Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "In other words, after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must ... demonstrate that there is a material issue of disputed fact as to discrimination." *Id.* at 315–16 (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 308 (5th Cir.1996)).

■ Plaintiff does not put forth any evidence or arguments that establish a prima facie case of age discrimination.[14] Nevertheless, the Court will consider whether Plaintiff has established a causal nexus between the termination of his employment and his age. As noted above, "[t]o establish an ADEA claim, 'a plaintiff must prove ... that age was the but-for cause of the challenged employer decision.'" *Moss,* 610 F.3d at 922 (citing *Gross,* 129 S.Ct. at 2351 (2009)). In the instant case, Plaintiff has failed to adduce any evidence that his age was the but-for cause of his termination. Instead, Plaintiff's only evidence is his own subjective belief, without any evidence in the record before the Court, that his termination was a result of his age. Regarding a similar situation, the Fifth Circuit stated the following:

> [T]he ADEA was not created to redress wrongful discharge simply because the terminated worker was over the age of forty. A discharge may well be unfair or even unlawful yet not be evidence of age bias under the ADEA. To make out an ADEA claim, the plaintiff must establish the existence of discrete facts that show some nexus between the em-

ployment actions taken by the employer and the employee's age.

*Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir.1993) (internal citations omitted). In the instant case, Plaintiff has failed to establish the existence of any discrete facts linking his termination to his age. Therefore, Plaintiff's ADEA claim fails.

## IV. CONCLUSION

In the instant case, Defendants Telemundo El Paso; KTDO Television; ZGS El Paso Television, L.P.; and ZGS Communications, Inc. have demonstrated that there is no genuine dispute of material fact as to Plaintiff's allegations that he was discriminated against because of his age, gender, and national origin and retaliated against for his complaint of sexual harassment. Therefore, the Court will grant Defendants' motion.

Accordingly, **IT IS ORDERED** that Defendants' "Motion for Summary Judgment" (ECF No. 36) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Jose Arango's Title VII of the Civil Rights Act of 1964 and Age Discrimination in Employment Act claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this case.

---

**14.** Plaintiff's only mentions of age in his affidavit consist of the following statements: "[S. Sanchez's] behavior towards me constituted discrimination based on my age ... because of ... my age. I knew that at my age, should I lose my job, it would be very difficult to get same or similar employment. I was constantly, deliberately, and systematically harassed, assaulted, and discriminated against at work due to my ... age." Resp. Ex. A., at 15. Plaintiff does not provide any other statement or evidence to connect the harassment he experienced to his age, nor does he allege any facts regarding this point.